## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

RICHARD WORLEY )
700 N.9th Street )
Independence, Kansas 67301 )
　　　　　　　　　　　　　　 )
　　　　　　Plaintiff, )　　　Case No. 09-CV-2573 JWL/DJW
　　　　　　　　　　　　　　 )
v. )
　　　　　　　　　　　　　　 )
WATCO COMPANIES, INC., )　　　**Jury Trial Requested**
a Kansas Corporation )
　　　　　　　　　　　　　　 )
Registered Agent: )
CORPORATION SERVICE COMPANY )
200 S.W. 30TH Street )
Topeka, Kansas 66611 )
　　　　　　　　　　　　　　 )
AND SOUTH KANSAS & OKLAHOMA )
RAILROAD, INC., a Kansas Corporation )
　　　　　　　　　　　　　　 )
Registered Agent: )
CORPORATION SERVICE COMPANY )
200 S.W. 30TH Street )
Topeka, Kansas 66611 )
　　　　　　　　　　　　　　 )
　　　　　　Defendants, )

### COMPLAINT

Comes Now, Plaintiff Richard Worley and for his cause of action against

Defendant Watco Companies, Inc. (WCI) and Defendant South Kansas &

Oklahoma Railroad, Inc. (SKOL) states the following:

### Nature of Action

1.　　This is an action by Plaintiff Worley under the Federal Employers'

Liability Act (FELA) 45 USC §§51 et. seq. for work injuries, and under the Kansas

state common law tort doctrine for retaliatory discharge based on reporting

personal injuries.　　Plaintiff was fired by Defendants on December 9, 2008

because he filed a personal injury report, based on a work related injury which occurred and was reported in late November, 2008.

### Jurisdiction of the Court

2.      Jurisdiction is proper over the FELA claim pursuant to 45 U.S. C. § 56 and 28 U.S.C. § 1331.   The Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367. All claims of Plaintiff against these Defendants are joined in one action; they are his former joint employers.

3.      Defendants operate trains in the transportation of freight in and between the state of Kansas and other states, and at all relevant times mentioned, engaged in business and subject to personal jurisdiction in the District of Kansas; therefore, this Court has personal jurisdiction over Defendants, and venue is proper pursuant to 28 U.S.C. § 1391.

### Parties

4.      At all times material hereto, Plaintiff Richard Worley was a citizen and resident of Independence, Kansas.

5.      Defendant South Kansas and Oklahoma Line Railroad (SKOL) is a Kansas Corporation, and was at all times relevant, a corporation engaged in the operation of a system of railways as a common public carrier of freight for hire between the various states of the United States and engaged in interstate commerce by railroad.

6.      Defendant Watco Companies (WCI) is a Kansas Corporation, and was at all times relevant, a corporation engaged in the operation of a system of

2

railways as a common public carrier of freight for hire between the various states of the United States and engaged in interstate commerce by railroad.

7.     At all times material hereto, Defendant SKOL conducted business in both Kansas and Oklahoma, and Defendant (WCI) is a corporation owning 20 railroads including SKOL, and the Eastern Idaho Railroad (EIR) as well as other rail-related and unrelated business organizations, doing substantial business in the State of Kansas, and doing business in at least 15 other states.

8.     WCI & SKOL are joint employers of Plaintiff Worley and all other employees on SKOL.

### Factual Background

9.     Plaintiff has worked for WCI for 7 ½ years, first as a joint employee with the Eastern Idaho Railroad (EIR), and then for the past 6 years as a joint employee with the SKOL. In February (approximate) 2003, Plaintiff transferred to Kansas to work on the SKOL.

10.     Plaintiff was employed by Defendants as a locomotive engineer, and at all times relevant to this complaint, parts of plaintiff's duties were in furtherance of interstate commerce and directly and substantially affected such commerce and, in late November and in December, 2008.     Plaintiff was employed by and engaged with the Defendants in interstate commerce.

11.     Plaintiff worked, primarily, as an engineer on switching engines doing switching work.

3

12.     Switching work consists of the breaking up and assembly of trains and the handling of railroad cars in interchange with industries and other carriers. It requires a railroad worker, known as a switchman, to be on the ground to direct movement of the engine and to do the manual labor associated with the breaking up and assembly of trains.  Defendants required Plaintiff to do both the tasks of engine operation and ground switching work.

13.     In late November, 2008, Plaintiff was working as an engineer on a switching crew.  Defendants assigned to Plaintiff a switchman who was new to the job.  In addition to the above duties Plaintiff was assigned also to train a new switchman at the time of the injury.

14.     In the course of performing switching work, a "joint" failed to "make" (i.e., the knuckle on the engine and the knuckle on the car to which it was going to connect, failed to couple together as intended; this meant that the locomotive and car to which it was going to connect failed to automatically couple together). The failure of the joint to make knocked the drawbar on the locomotive out of alignment.

15.     The coupler on both a locomotive and railroad car consists of a knuckle and a drawbar.  The knuckle is a heavy clamp that is designed to interlock with its mate.  The draw bar is a heavy rectangular metal bar on which the knuckle is affixed.  It extends the knuckle out from the end of the car and attaches to the car in a housing mechanism that allows the drawbar to pivot as cars travel down the tracks and around curves.

4

16.     When the drawbar is out of alignment, it is impossible for the locomotive to connect with any car. To remedy the unaligned drawbar required that someone on the ground manually realign the drawbar. The new switchman was not able to do this.

17.     As a result, Plaintiff left the locomotive and went on the ground to realign the drawbar.  To realign the drawbar, Plaintiff had to go between the engine and car to manually move the drawbar into an aligned position. As he did this, he encountered stiff resistance, which jolted his body and caused injury to his back, midway between low back and mid-back.

18.     The locomotive's knuckles, drawbar, and related mechanisms were badly beaten up and worn out. They were in a poor condition and a poor state of repair. As a result the knuckles failed to couple automatically and the drawbar was difficult and dangerous to realign. This equipment should not have been in service.

19.     Plaintiff  followed  all  standard  rules  and  instructions  for performance of his work in attempting to realign the drawbar.

20.     The Defendants' rules require any and all injuries to be promptly reported; failure to do so is punishable by discipline up to and including dismissal.

21.     Contrary to their written injury reporting rules, Defendants have an unwritten policy and practice of retaliation against employees who report on the job injuries, often intimidating, threatening and taking action to prevent them from

formally reporting injuries.    Defendants frequently discipline or dismiss employees if and when they do comply with the rule requiring reporting. Formal reporting involves filling out an injury report and usually leaving work to go to a medical facility for evaluation.

22.    Because of Defendants' policy and practice of retaliating against employees who reported injuries, Plaintiff was afraid to report his injury for fear of losing his job. To try and avoid being fired, Plaintiff decided to report the injury, but decided to forego medical care or recovery time.

23.    Plaintiff called his supervisor, Greg Horner, and reported the injury verbally. Horner asked Plaintiff whether he was "injured or do you just hurt?" Plaintiff told Horner that he was injured realigning a drawbar, and Horner asked Plaintiff whether Plaintiff wanted Horner to "come down there?"  Horner was based in Cherryvale, KS and would have to travel to Plaintiff's work site, with a report form. Plaintiff reluctantly told him "I guess that's what I'm supposed to do; you might as well come down". Horner came down with Ray Pena. Both spoke with plaintiff, and plaintiff filled out a personal injury report.

24.    Defendants made clear to the Plaintiff he would be fired if he reported the injury; however, Plaintiff felt that under Defendants' rules he had to report it and he kept working, although in significant pain, and deliberately did not seek medical care, in hopes Defendant would not fire him.

25.    On December 9, 2008 Defendants fired Plaintiff, declaring that because of the injury report, they "could not have him around there anymore."

26.    Defendants stated he was "under investigation" and had "failed 48 efficiency tests in one year". This was not true. Plaintiff, in fact, failed no more than three, and passed all others. Defendant did not do 48 such tests, at least not that they properly informed plaintiff of, if they did.

27.    Defendants had never previously criticized or complained about Plaintiff's work performance or rules and practices compliance. On the contrary, they had told Plaintiff he was a good employee. This criticism was a pretext; the real reason was the only one they stated: it was because he filed an injury report.

28.    Plaintiff did perform all duties competently during his 7 ½ years, and worked anytime the company needed him, which resulted in 60 to 80 hour work weeks. The week in which he was injured was an 80 hour work week.

29.    As a result of this unlawful dismissal Plaintiff has been unable to obtain other adequate work and has been unemployed and under-employed since December 9, 2008. Plaintiff has lost pay and benefits during the entire time since dismissal.

30.    As a direct result of Defendants' conduct, Plaintiff will in the future continue to suffer loss of earnings and benefits and loss of earning capacity, as well as other damages more fully described below. Plaintiff has also suffered humiliation, the burden of a false "for cause" dismissal, emotional distress, and a diminished earning capacity.

### Count I:  Discharge In Violation of Public Policy

For Count I of his Complaint, Plaintiff states as follows:

31.    Plaintiff re-states and re-alleges paragraph 1-30 as though fully set forth herein.

32.    As a result of his injury, Plaintiff filed a personal injury report.  This is a protected act under Kansas law.

33.    As a direct result of filing the personal injury report, Defendants fired Plaintiff.

34.    Defendants' firing of Plaintiff was in retaliation for the personal injury report; and the non-discriminatory factor Defendants mentioned for the firing is pretext.

35.    Defendants' conduct violates the Kansas common law concerning retaliatory firing.

36.    As a direct result of Defendants' aforesaid wrongful conduct, plaintiff has sustained damages.  Plaintiff has lost his earnings and benefits, and will in the future lose his earnings and benefits, which would be in excess of $3200 to $4800 per month.  As a result of said conduct, Plaintiff has suffered and will ever suffer mental anguish and pain and suffering.

37.    Plaintiff further alleges the wrongful act was done intentionally, with intent to harm, with hostility and indifference to Plaintiff's rights, and that Defendants have a history of such lawless, retaliatory behavior, and Plaintiff therefore claims punitive damages under Kansas law.

WHEREFORE, Plaintiff prays judgment under Count I of his Complaint against Defendants for damages that are fair and reasonable and in an amount

greater than $75,000, for costs incurred herein, for post-judgment interest, and for any and all other relief to which plaintiff is entitled.

## Count II:  FELA Negligence

For Count II of his Complaint, Plaintiff states as follows:

38.    Plaintiff re-states and re-alleges paragraphs 1-37 as though fully set forth herein.

39.    Plaintiff was injured while working in the course and scope of his duties in late November, 2008 as an engineer for Defendants.

40.    Plaintiff's aforesaid injuries were directly caused, in whole or in part, by the negligence of the Defendants, including, without limitation, in the following respects, to-wit: Defendant negligently failed to furnish and provide plaintiff with a reasonably safe place to work, reasonably safe methods for work, reasonably safe conditions for work and reasonably safe appliances for work in that defendant BNSF negligently:

> a. allowed use of  a defective and unreasonably dangerous drawbar and knuckle that were not in proper working condition and were not capable of being operated without unreasonable risk of injury;
>
> b. failed to reasonably inspect, repair and maintain the drawbar and knuckle  so that they could be operated without unreasonable risk of injury;
>
> c. failed to remove the drawbar and knuckle from service;

    d.  failed to promulgate and enforce reasonable safety rules, customs, practices, policies and procedures requiring inspections, repairs and maintenance of the drawbar and knuckle;

    e.  failed to reasonably train, educate and instruct its employees in the rules, customs, practices, policies and procedures reasonably necessary to ensure that drawbars and knuckles, including this drawbar and knuckle, were in proper and safe condition;

    f.  failed to give adequate warning of the hazards and dangers to its employees, including plaintiff, of the unsafe nature of the drawbar and knuckle, including that the drawbar was not capable of being aligned without unreasonable risk of injury and the knuckle was not capable of coupling automatically.

41.    Defendants knew, or in the exercise of ordinary care should have known, that in acting and failing to act as described above, it was reasonably likely that employees, including plaintiff, would be injured.

42.    The Defendants' acts and omissions listed above constitute negligence.

43.    As a direct result of the aforesaid negligence of the Defendants, plaintiff sustained permanent injuries to his back.   On account of these injuries, plaintiff has undergone medical care and treatment.   The strength, use and function of plaintiff's body has been permanently weakened, diminished and

impaired. As a result of said injuries, plaintiff has suffered and will ever suffer severe physical pain and mental anguish, and pain and suffering. Because of said injuries, plaintiff has lost capacity for the enjoyment of life in the past and will suffer loss of capacity for the enjoyment of life in the future.

44. Prior to these injuries, plaintiff was a strong, able-bodied man, capable of earning and actually earning in excess of $3200 to $4800 per month in earnings. On account of these injuries, Plaintiff has lost his earnings and will in the future lose his earnings, which would be in excess of $3200 to $4800 per month, and his power to work and labor and his earning capacity have been permanently weakened, diminished and impaired. As a direct result of the aforesaid injuries, plaintiff has been caused to incur medical expenses associated with the treatment of his injuries and will in the future incur medical expenses associated with the treatment of his injuries. Also, as a direct result of these injuries, plaintiff has suffered the loss of his fringe benefits and will in the future lose fringe benefits. Further, as a direct result of these injuries, plaintiff has been unable to perform his usual and normal household services and will in the future be unable to perform such services. By reason of the facts herein alleged, plaintiff has suffered damages in excess of the minimum jurisdictional limits of this Court.

WHEREFORE, plaintiff prays judgment under Count II of his Complaint against Defendants for damages that are fair and reasonable and in an amount greater than $75,000, for costs incurred herein, for post-judgment interest, and for any and all other relief to which plaintiff is entitled.

## Count III: Safety Appliance Act

For Count III of his Complaint, Plaintiff states as follows:

45.     Plaintiff re-states and re-alleges paragraphs 1-44 as though fully set forth herein.

46.     This action is brought under the Federal Employers' Liability Act, 45 U.S.C. §§ 51, et seq., and the Federal Safety Appliance Acts, 49 U.S.C. §§ 20301, et seq., and the federal regulations promulgated there under.

47.     Defendant used on its line a railroad car that failed to have couplers coupling automatically by impact, and capable of being uncoupled, without the necessity of individuals going between the ends of the vehicles.

48.     Defendant's violation of the Federal Safety Appliance Acts, and federal regulations, including, without limitation, 49 C.F.R. § 215.123, resulted in whole or in part in plaintiff's injuries.

49.     As a direct result of the aforesaid negligence of the Defendants, plaintiff sustained permanent injuries to his back.   On account of these injuries, plaintiff has undergone medical care and treatment.   The strength, use and function of plaintiff's body has been permanently weakened, diminished and impaired.   As a result of said injuries, plaintiff has suffered and will ever suffer severe physical pain and mental anguish, and pain and suffering.   Because of said injuries, plaintiff has lost capacity for the enjoyment of life in the past and will suffer loss of capacity for the enjoyment of life in the future.

50.     Prior to these injuries, plaintiff was a strong, able-bodied man, capable of earning and actually earning in excess of $3200 to $4800 per month in earnings. On account of these injuries, Plaintiff has lost his earnings and will in the future lose his earnings, which would be in excess of $3200 to $4800 per month, and his power to work and labor and his earning capacity have been permanently weakened, diminished and impaired. As a direct result of the aforesaid injuries, plaintiff has been caused to incur medical expenses associated with the treatment of his injuries and will in the future incur medical expenses associated with the treatment of his injuries. Also, as a direct result of these injuries, plaintiff has suffered the loss of his fringe benefits and will in the future lose fringe benefits. Further, as a direct result of these injuries, plaintiff has been unable to perform his usual and normal household services and will in the future be unable to perform such services. By reason of the facts herein alleged, plaintiff has suffered damages in excess of the minimum jurisdictional limits of this Court.

WHEREFORE, plaintiff prays judgment under Count III of his Complaint against Defendants for damages that are fair and reasonable and in an amount greater than $75,000, for costs incurred herein, for post-judgment interest, and for any and all other relief to which plaintiff is entitled.

### Count IV: Locomotive Inspection Act

Plaintiff, for Count IV of his Complaint states as follows:

51.     Plaintiff re-states and re-alleges paragraphs 1-50 as though fully set forth herein.

13

52.    This action under Count II is brought under the Federal Employers'
Liability Act, 45 U.S.C. §§ 51, et seq., the Federal Locomotive Inspection Act, 49
U.S.C. §§ 20701, et seq., and the Federal Regulations promulgated pursuant to
those acts.

53.    Defendant used on its line a locomotive that was not in proper
condition and which could not be safely operated without unnecessary danger of
personal injury, including that Defendant:

> a.  Operated a locomotive that had a drawbar that was not
>     reasonably safe for use;
>
> b.  Operated a locomotive that had a knuckle that was failed to
>     and was not capable of, coupling automatically;
>
> c.   Failed to reasonably maintain its locomotive in a reasonably
>     safe condition to avoid exposing employees, including
>     Plaintiff, to the unreasonably dangerous drawbar;
>
> d.  Failed to reasonably inspect its locomotive, including the
>     drawbar and knuckle, for the purpose of determining whether
>     it was reasonably likely to expose employees, including
>     Plaintiff, to the unreasonably dangerous condition.

54.    Defendant's above described acts and omissions, in violation of the
Locomotive Inspection Act, and federal regulations promulgated there under,
resulted in whole or in part in Plaintiff sustaining painful and permanent injuries.

55.    As a direct result of the aforesaid negligence of the Defendants,
plaintiff sustained permanent injuries to his back.   On account of these injuries,

14

greater than $75,000, for costs incurred herein, for post-judgment interest, and for any and all other relief to which plaintiff is entitled.

Respectfully Submitted,

CHARLES A COLLINS, P.A.

Charles A. Collins, MN #0017954
Labor and Professional Centre
411 Main Street, Suite 410
Saint Paul, MN  55102
Telephone: (651) 225-1125
Facsimile: (651) 225-1153
Email: chas@qwestoffice.net

and

HUBBELL PEAK O'NEAL NAPIER & LEACH

s/ Charles W. Gordon, Jr.
Christopher H. Leach, U.S.D.Ct No. 70568
Charles W. Gordon, Jr. KS Sup.Ct. No. 22317
30 W. Pershing Road, Suite 350
Kansas City, Missouri 64108
Telephone: (816) 221-5666
Facsimile: (816) 221-5259
Email: cleach@hubbellfirm.com
        cgordon@hubbellfirm.com

ATTORNEYS FOR PLAINTIFF

**Jury Demand**

Plaintiff respectfully demands trial by jury of all issues herein.

s/ Charles W. Gordon, Jr.
ATTORNEY FOR PLAINTIFF

16